IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN BLOMENKAMP, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SAFELITE GROUP, INC., a Delaware corporation, and

SAFELITE FULFILLMENT, LLC, d/b/a Safelite AutoGlass, a Delaware limited liability company,

Defendants.

No. ___________________

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

PARTIES ..... 4

JURISDICTION AND VENUE ..... 5

FACTS COMMON TO ALL COUNTS ..... 6

*Safelite Is the Dominant Player in the U.S. Auto Glass Replacement Market* ..... 6

*Safelite Has a History of Allegedly Deceiving Consumers* ..... 7

*Safelite Uses "Drip Pricing" to Lock In Appointments Without Clearly Disclosing the Mandatory $39.99 Recycling Fee* ..... 8

*The Quote Page Bait* ..... 14

*The Quote Email Bait* ..... 16

*The Confirmation Switch* ..... 19

*Safelite's Recycling Fee Deceives Consumers* ..... 23

*Safelite's Recycling Fee Is a Profit Center* ..... 28

*Safelite Charges the Recycling Fee Even When It Recycles Nothing* ..... 31

*Plaintiff Blomenkamp's Experience with Safelite* ..... 32

*Plaintiff Blomenkamp's Experience Is Not Unique Because—as Safelite Admits—Tempered Glass Shatters on Impact* ..... 38

*Safelite's Practices Concerning the Recycling Fee Violate Established Ethical Standards in the Marketing Industry* ..... 39

*Safelite Knows and Intends that it Deceives Reasonable Consumers* ..... 41

CLASS DEFINITIONS AND ALLEGATIONS ..... 42

CAUSES OF ACTION ..... 46

COUNT I Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2): Deceptive Conduct ..... 46

COUNT II Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2): Unfair Conduct ..... 49

COUNT III Violation of State Consumer Protection Statutes ........................................ 51

COUNT IV Unjust Enrichment ........................................................................................ 53

PRAYER FOR RELIEF ........................................................................................................ 53

JURY DEMAND ..................................................................................................................... 54

Plaintiff John Blomenkamp, by and through his undersigned counsel, brings this Class Action Complaint against Defendants Safelite Group, Inc. and Safelite Fulfillment, LLC (collectively, "Safelite" or "Defendants"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by counsel.

**INTRODUCTION**

1. This case is about a brazen bait-and-switch scheme. Defendant Safelite—the largest auto glass repair and replacement company in the United States, serving over six million consumers annually—systematically lures consumers with low price quotes and then, after they have invested time and personal information in the scheduling process, reveals that it will add a mandatory $39.99 "recycling fee" to the bill. That fee is not what it purports to be. It is a profit center disguised as a cost-recovery charge, generating tens of millions of dollars for Safelite each year while deceiving the consumers who pay it.

2. Safelite employs a practice known as "drip pricing." When a consumer visits Safelite's website to schedule a glass replacement, Safelite first extracts detailed information—vehicle year, make, model, VIN, and personal contact information—before presenting a price quote. That quote, displayed prominently in large green text, does not include the $39.99 recycling fee. Only at the very end of the scheduling process—after the consumer has spent considerable time and effort and selected an appointment date and location—does Safelite reveal the true price, which can be over 10% higher than the initial quote. Courts and regulators recognize that drip pricing is a deceptive practice that exploits consumers' sunk-cost psychology to compel acceptance of a higher, previously concealed price.

3. Safelite's deception does not stop at concealing the fee's existence. Safelite also misrepresents the very nature and purpose of the recycling fee. Safelite tells consumers—to the extent it tells them anything at all—that the fee covers the cost of working with a recycling partner to dispose of scrap glass "in a way that doesn't harm the environment." That representation is false in multiple respects. The $39.99 charge bears no reasonable relationship to Safelite's actual recycling costs, which—even under generous assumptions about disposal and transportation rates—amount to approximately $4.16 per windshield. Thus Safelite's recycling fee is nearly ten times its actual recycling costs, generating a profit margin approaching 90%.

4. The recycling justification is further undermined by Safelite's own admissions. Safelite concedes that as of 2022, it did not recycle 15% of the scrap glass it collected. And even Safelite's aspirational goal falls short of recycling 100% of collected glass. In other words, Safelite knowingly charges every consumer a recycling fee while acknowledging it will not recycle a meaningful portion of the glass. Consumers who have directly confronted Safelite's technicians and customer service representatives about this discrepancy—including one who claims to have watched their scrap glass thrown into a dumpster—have still been forced to pay the fee, confirming that the charge is mandatory regardless of whether any recycling occurs.

5. Most egregiously, Safelite charges the recycling fee even when recycling is physically impossible. The side and rear windows of vehicles are made of tempered glass, which is engineered to shatter into tiny granular fragments on impact. When tempered glass breaks, it generally falls in and around the vehicle, and will often be cleaned up by the vehicle's owner before a repair appointment is ever scheduled. In those cases, there is no scrap glass left for Safelite to collect, recycle, or dispose of—yet Safelite charges the $39.99 recycling fee anyway.

6. That was Plaintiff John Blomenkamp's experience. Blomenkamp is a farmer who lives in St. Clair County, Illinois. In 2022, a grain wagon shattered the driver's side back window of his 2001 Ford F-450. Blomenkamp cleaned up and disposed of all the resulting glass fragments himself. Three years later, when Blomenkamp scheduled a window replacement through Safelite's website, Safelite initially quoted him the price of $269.00. Only after scheduling did Blomenkamp discover that Safelite had added a $39.99 recycling fee. Blomenkamp assumed—as would any consumer—that Safelite would not be so unscrupulous as to charge a recycling fee when he had no scrap glass capable of being recycled and asked that the fee be waived. But instead, Safelite's technician lied and told Blomenkamp the fee was required by Illinois law.

7. Blomenkamp is far from alone. Safelite's Better Business Bureau profile carries an average customer rating of 1.16 out of 5 stars (drawn from hundreds of reviews) and has accumulated at least 1,924 complaints in the past three years—so many that the BBB publishes only approximately one in four. A recurring theme across these complaints is Safelite's practice of omitting the recycling fee from quoted prices, charging the fee when no recycling was performed, and refusing to waive it when consumers object. These complaints are not isolated grievances; they are the predictable result of a pricing system designed to deceive.

8. And this is not Safelite's first encounter with allegations of this character. In 2023, a *qui tam* relator brought insurance fraud actions in Illinois and California alleging that Safelite systematically billed insurers for part-specific molding while using cheaper generic materials, and charged mandatory COVID-era vehicle sanitization fees while rarely performing sanitization services. Safelite paid $31 million to settle those actions (while denying wrongdoing). The sanitization-fee allegations bear a striking structural resemblance to the recycling-fee scheme alleged here: in both cases, Safelite charged a mandatory fee for a service that was not consistently

performed, in an amount disconnected from any underlying cost. The recycling fee scheme is the same playbook applied to a different line item.

9. Plaintiff brings this action on behalf of himself and three proposed classes of consumers who paid Safelite's recycling fee: a Nationwide Class of all U.S. consumers who paid the fee, an Illinois Class of Illinois consumers who paid the fee; and a Multistate Consumer Class of consumers who paid the fee in jurisdictions with materially similar consumer protection laws. Safelite's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act (on both deception and unfairness grounds), the consumer protection statutes of those other jurisdictions, and constitutes unjust enrichment. Plaintiff seeks for himself and the Classes compensatory damages, restitution and disgorgement of Safelite's unjust profits, and other appropriate relief. This case is well-suited for class treatment because Safelite's recycling fee scheme is uniform, company-wide, and well-documented.

10. Safelite should be held accountable for the millions of dollars it has extracted from consumers through its deceptive and unfair practices.

**PARTIES**

11. Plaintiff John Blomenkamp is an individual resident of St. Clair County, Illinois.

12. Defendant Safelite Group, Inc. ("Safelite Group") is a Delaware corporation with its principal place of business located at 7400 Safelite Way, Columbus, Ohio 43235. Safelite Group is a subsidiary of Belron, an English company headquartered in Egham, Surrey, United Kingdom. Safelite Group oversees and manages subsidiary Safelite AutoGlass. Safelite Group employs the members of Safelite's executive leadership team, which makes all strategic, policy, management, and operations decisions for Safelite AutoGlass. In sum, Safelite Group is the managing entity for

all aspects of Safelite AutoGlass's operations, and as a result, is responsible along with Safelite AutoGlass for the deceptive and unfair conduct described throughout this Class Action Complaint.

13. Defendant Safelite Fulfillment, LLC d/b/a Safelite AutoGlass ("Safelite AutoGlass") is a Delaware limited liability company with its principal place of business located at 7400 Safelite Way, Columbus, Ohio 43235. Safelite AutoGlass is the retail auto glass division of Safelite Group. Safelite AutoGlass presents itself as the largest auto glass repair and replacement organization in the United States, and performs repair and replacement services for all types of vehicle glass. Before around March 2025, Safelite AutoGlass operated through its predecessor in interest, Safelite Fulfillment, Inc., a Delaware corporation.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this matter is a class action in which the matter in controversy, exclusive of interest and costs, exceeds $5,000,000, there are more than 100 putative class members, and some class members (including Plaintiff Blomenkamp) are citizens of states different from Defendants.

15. This Court has personal jurisdiction over Defendants because Defendants transact substantial business in Illinois. Defendants operate twenty-five auto glass service centers in Illinois (including those located at 9998 Saint Clair Avenue, Fairview Heights, Illinois 62208, and 320 Homer M. Adams Parkway, Suite A, Alton, Illinois 62002) and offer mobile glass service throughout Illinois. Moreover, Plaintiff Blomenkamp's injury arises out of Defendants' conduct in Illinois, as described throughout this Class Action Complaint.

16. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff Blomenkamp's claims occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

***Safelite Is the Dominant Player in the U.S. Auto Glass Replacement Market***

17. Safelite represents itself to be "the largest auto glass specialist company in the United States," serving 6.2 million consumers annually through "more than 850" locations. It says that it "fixes more windshields than anyone else in the U.S."

18. Safelite has expanded rapidly over the past twenty years. After emerging from Chapter 11 reorganization in the early 2000s, Safelite was acquired by parent Belron and began to aggressively pursue revenue and market share. According to a 2018 *Forbes* article, between 2008 and 2012, Safelite doubled its revenue from $500 million to over $1 billion. In August 2019, Safelite acquired TruRoad Holdings, Inc., which was then the second largest auto glass repair company in the United States and Safelite's closest competitor. Following that acquisition, industry publication *Auto Glass Repair and Replacement* (commonly known as *AGRR*) estimated that Safelite "now owns upward of one third of the U.S. auto glass services market."

19. The chart below, published by *AGRR*'s online outlet in 2019, shows Safelite's growth from $300 million in annual revenue in the early 1990s to nearly $2 billion at the time of publication.




SOURCE: KEY MEDIA & RESEARCH AND BELOW REFERENCES:
$300: https://profilemagazine.com/2018/doug-herron-safelite/
$$800: https://www.bizjournals.com/columbus/stories/1997/10/06/daily15.html
$500: https://www.forbes.com/sites/micahsolomon/2018/12/23/how-safelite-built-a-customer-service-culture-doubled-revenue-by-consulting-customers-directly/#57d111f43390
$1.1B: https://www.safelite.com/about-safelite/press-releases/safelite-continues-growing-contact-centers
$1.6B: https://www.forbes.com/sites/micahsolomon/2018/12/23/how-safelite-built-a-customer-service-culture-doubled-revenue-by-consulting-customers-directly/#57d111f43390
$1.8B: Estimate after most recent acquisition

20. Industry sources now estimate Safelite's annual U.S. revenues to be more than $2 billion. An April 2024 article from the investment website *Seeking Alpha* observed that Safelite's parent company, Belron, has experienced an "explosion in profitability since 2019 . . . on the back of a three-fold multiplication of operating margin, from just under 6% to over 20% in the past calendar year."

***Safelite Has a History of Allegedly Deceiving Consumers***

21. In 2023, a relator acting on behalf of the State of Illinois and the State of California brought against Safelite insurance fraud actions captioned *Illinois ex rel. Williams v. Safelite Group, Inc.*, No. 2023-CH-00537, filed in the Circuit Court of Cook County, Illinois, and *California ex rel. Williams v. Safelite Group, Inc.*, No. 23-CIV-00025, filed in the Superior Court of San Mateo County, California (the "Relator Actions").

22. The relator who brought the Relator Actions had been employed by Safelite Group from 2013 through 2020, and by its parent company, Belron, from 2020 through 2021. The relator

alleged that he resigned from Belron in 2021 after his attempts to bring attention to Safelite's fraudulent practices repeatedly were rebuffed by upper management.

23. The Relator Actions alleged two distinct fraudulent schemes: (i) Safelite intentionally designed its invoicing system to make it appear that glass replacement services were performed using part-specific molding, and to bill insurers for that more expensive molding, while knowing that technicians in fact used cheaper, generic universal molding; and (ii) during the COVID-19 pandemic, Safelite intentionally charged consumers who purchased glass repair or replacement services a mandatory vehicle sanitization fee while knowing that in most instances no sanitization was performed.

24. The Relator Actions alleged that between the two fraudulent schemes, Safelite overcharged insurers anywhere between tens and hundreds of millions of dollars.

25. Safelite agreed to pay a total of $31 million to settle the Relator Actions. Safelite denied in the settlement agreements that it engaged in unlawful, wrongful, or improper conduct.

26. The Relator Actions' allegations regarding the sanitization fee scheme are strikingly similar to the deceptive and unfair conduct alleged in this Class Action Complaint. Both schemes involve Safelite (i) charging fees for services that are not always performed; (ii) charging fees in amounts that have no connection to the costs incurred or the value provided; and (iii) requiring that the fees be charged regardless of whether the associated services were performed.

***Safelite Uses "Drip Pricing" to Lock In Appointments Without Clearly Disclosing the Mandatory $39.99 Recycling Fee***

27. Safelite's consumer business provides two primary services: auto glass repair and auto glass replacement. Safelite provides these services both at brick-and-mortar retail locations and through mobile technicians who travel to the consumer's location.

28. When Safelite performs glass replacement services, it uniformly charges consumers a mandatory $39.99 "recycling" fee.

29. Even though Safelite's recycling fee is fixed and mandatory, Safelite hides the fee from prospective consumers through "drip pricing," a modern descendant of traditional bait-and-switch schemes.

30. Drip pricing occurs when sellers offer prospective consumers an initial low price to lure them in and then add mandatory fees as the transaction moves toward completion.

31. Courts and regulatory authorities have recognized that drip pricing is unfair to consumers because the seller (i) advertises an initial price at which it does not intend to sell its goods or services; (ii) reveals the true price only after the consumer spends time and effort moving the transaction toward completion; and (iii) leverages consumers' tendency to accept the higher, initially undisclosed price rather than begin searching anew for more competitive offers. The result is that consumer demand becomes less elastic and consumers are compelled to accept higher prices. Drip pricing is deceptive even if the seller shows the total cost before the transaction has been fully completed because the adverse effect on consumer demand has already occurred. *Kahn v. Walmart Inc.*, 107 F.4th 585, 600–01 & n.8 (7th Cir. 2024).

32. Safelite maintains a website located at https://www.safelite.com/ (the "Website").

33. Safelite's Website allows consumers seeking glass replacement services to receive a price quote and schedule an appointment. Before consumers receive a quote or schedule an appointment, the Website first requires them to answer a series of questions about themselves and their vehicle.

34. The first step of this process, shown below, requires the consumer to enter the year, make, model, and style of their vehicle.



35. The next step, shown below, prompts the consumer to indicate where on their vehicle the glass requiring replacement is located (windshield, back glass, driver's side, or passenger's side).



36. The next step, shown below, asks the consumer to provide their vehicle identification number ("VIN") or other personal information that can be used to obtain the VIN.



37. If the consumer declines to provide their VIN or other personal information, they are asked specific questions about their vehicle's features (shown below).




38. After the consumer has answered all those questions, Safelite asks them to provide an email address to receive their price quote via email or to click through on the Website to see their price quote immediately.

***The Quote Page Bait***

39. Consumers who choose to see the quote immediately are routed to a page that presents several service options and price quotes (the "Quote Page"). A representative example of the Quote Page is shown below.




40. The top of the Quote Page states in bold black text "We've got your [Year] [Make] [Model] covered!" with the bracketed items representing the vehicle information that the consumer provided earlier in the process. Beneath that sentence, smaller grey text states "Now choose your

payment and service options*." The Quote Page then allows the consumer to select "Pay on my own" or "Pay with insurance" and presents three service options ("Glass service only," "Standard," and "Premium"). Each service option shows in large green text the price quote for payment made in four installments, and below that, in small grey text, the price quote for a payment in full.

41. None of the price quotes shown on the Quote Page include the recycling fee.

42. Below the service options and price quotes, the Quote Page contains five additional items stacked vertically: (i) a box shaded light blue that promotes "flexible, interest-free payment options"; (ii) bright blue text stating "I have a promo code" which, if clicked, allows the consumer to enter a promotional discount code; (iii) a large red button with white text stating "Continue" (the "Continue Button"); (iv) an outlined box shaded grey with text stating "Save your progress and continue from here later"; and (v) at bottom, in grey text that is smaller than or as small as any of the other text on the Quote Page, the statement "*Quote does not include tax, recycling fee or mobile service fee if applicable."

43. Clicking the Continue Button takes the consumer to another webpage that allows them to schedule the selected service.

44. The Quote Page is designed in such a manner that consumers are induced to select their payment method and service level and click the "Continue" button without realizing there is additional text below the button. Depending on the size of the screen the consumer is using to view the Quote Page, the text below the Continue Button may not even be visible unless the consumer scrolls the page further downward.

45. Consequently, Safelite leads reasonable consumers to believe that the price quoted in bold green text is the price at which Safelite intends to sell them the services selected. But that is not true, because Safelite also intends to charge, and does charge, the mandatory recycling fee.

46. Hence Safelite presents information on the Quote Page in a manner that is likely to deceive, and does deceive, reasonable consumers.

*The Quote Email Bait*

47. Consumers who choose to receive their quote via email are similarly deceived. A representative example of an email containing a quote ("Quote Email") is shown below.



48. The Quote Email states "Let's get you on the books!" in large bold black text. Below that is smaller text touting Safelite's "free mobile service," "expert techs," and "nationwide warranty," and a statement encouraging the consumer to "Pick up where you left off and finish scheduling today." Below that is the statement "Your saved quote:" with the quote displayed in bright green text, followed by an asterisk. And immediately below the quote is a large blue button with a white calendar icon and white text stating "Finish scheduling" (the "Finish Scheduling Button").

49. If the consumer clicks the Finish Scheduling Button, they are routed back to the Website and presented with the Quote Page as described above.

50. The Quote Email continues with bold black text stating "Reasons to book with Safelite," some marketing representations, and bold black text stating "Service overview," followed by information about the consumer's vehicle, the service type, the consumer's zip code, and the same quote provided above, again displayed in bright green text and followed by an asterisk. This is all followed by another Finish Scheduling Button (this one white with blue text).

51. Neither of the quotes provided in the Quote Email include the recycling fee.

52. The Quote Email then continues as shown below:

"Kudos to the team at Safelite Autoglass for their exceptional service and for turning what could have been a stressful situation into a pleasant one. I highly recommend them to anyone ..."

★★★★★ Jordan, verified customer

View Safelite customer reviews

Safelite

*This quote is good for up to 3 days. The price quoted is based on the information you provided related to your vehicle and the type of service, and includes basic labor and parts used when replacing/repairing your damaged auto glass. In some cases, the condition or style of the vehicle may require that the Safelite technician use additional materials such as replacement moldings or other accessories to ensure a safe, quality installation. Your technician will complete an evaluation of the vehicle and provide an estimate for any additional costs prior to starting the work.

© Copyright 2026 Safelite® Group,
7400 Safelite Way, Columbus, Ohio 43235.

You've received this email because you recently contacted the Safelite® Group family of companies for auto glass information.

Help Center Privacy Policy Terms of Service
View in Browser

53. This portion of the Quote Email displays a review from a "verified customer" and a large button that if clicked allows the consumer to "View Safelite customer reviews." Below all that, in grey text that is as small or smaller than all other text in the Quote Email, is the following statement:

> *This quote is good for up to 3 days. The price quoted is based on the information you provided related to your vehicle and the type of service, and includes basic labor and parts used when replacing/repairing your damaged auto glass. In some cases, the condition or style of the vehicle may require that the Safelite technician use additional materials such as replacement moldings or other accessories to ensure a safe, quality installation. Your technician will complete an evaluation of

the vehicle and provide an estimate for any additional costs prior to starting the work.

54. The Quote Email is designed to induce consumers to click one of the two Finish Scheduling Buttons without realizing there is additional text below the button.

55. Even if the consumer scrolls through and reads the entire Quote Email, the mandatory recycling fee is not disclosed.

56. Consequently, Safelite leads consumers to reasonably believe that the price quoted in green text is the price at which Safelite intends to sell them the glass replacement service. But that is not true, because Safelite also intends to charge, and does charge, the mandatory glass recycling fee.

57. Hence Safelite presents information in the Quote Email in a manner that is likely to deceive, and does deceive, reasonable consumers.

***The Confirmation Switch***

58. Once a consumer clicks the Continue Button on the Quote Page, they are prompted to choose between receiving mobile service or receiving service at one of Safelite's brick-and-mortar locations. Once that selection is made, the consumer is asked to provide their personal contact information.

59. Finally, the consumer is routed to a page to confirm their appointment (the "Confirmation Page"). On the Confirmation Page, the price shown is now substantially higher than that shown on the Quote Page or in the Quote Email—in this representative example, the cost of the service jumps from $345.13 to $408.93.

Safelite

## Review, confirm and submit

**Almost done!** To finish scheduling, please review your appointment details then choose how you want to pay.

**Appointment details**

9998 Saint Clair Ave, Fairview Heights, IL 62208 **on** Thursday, July 2, 2026 **at** 7:00 AM

**Order details** $408.93

4 interest-free payments of $102.23
over six weeks with Afterpay

See payment plan

Choose a payment option:

Pay now — Credit Debit | PayPal

Pay in 4 installments — Afterpay

Pay with insurance

Pay at my appointment

Submit

60. By default, there is no explanation for the increase in price. Only if the consumer clicks on the blue arrow icon next to the price does an itemization appear (shown below).




61. Here, Safelite discloses for the first time the mandatory $39.99 recycling fee—after the consumer has provided their vehicle information, the type of replacement needed, their VIN or comparable information, and contact information, and selected an appointment date, location, and time—and even then, only if the consumer clicks on the blue arrow icon.

62. In this example, the inclusion of the recycling fee increases by over 10% the price previously represented on the Quote Page or in the Quote Email.

63. Consumers who click or hover over the blue "i" icon next to the "Recycling" charge see a window stating "**Specialized materials recycling**[.] We work with a recycling partner to dispose of your window glass and its component parts in a way that doesn't harm the environment, and we recycle all materials that can be repurposed."



***Safelite's Recycling Fee Deceives Consumers***

64. Consumers are deceived by Safelite's drip pricing.

65. The Better Business Bureau ("BBB") is a nonprofit organization that provides consumer services including business profiles and ratings, complaint resolution, and fraud prevention.

66. Safelite's profile page on the BBB website shows that it has a rating of 1.16 out of 5 stars based on the average of 664 customer reviews.




67. Indeed, the BBB receives so many complaints about Safelite that it is unable to publish all of them on its website. Safelite's BBB profile page states "[p]lease be advised that due to the high volume of complaints received for this business, BBB may publish 1 out of every 4 complaints handled through our conciliation process."

Important information

**Additional Info:** As of April 18, 2023 Please be advised that due to the high volume of complaints received for this business, BBB may publish 1 out of every 4 complaints handled through our conciliation process.

68. Notwithstanding that disclaimer, Safelite's BBB profile page records at least 1,924 complaints filed within the past three years. Many of these complaints relate to Safelite's practices concerning the recycling fee, including its practice of failing to clearly disclose the amount of the recycling fee, and its practice of charging the fee even when no recycling services are performed.

69. One complaint, dated April 17, 2025, from a consumer identified as "Jennifer C," states[1]:

> We requested a certain windshield and when came out had an aftermarket windshield. **The quote was given then later extra $90 was add which was taxes and recycle fee. That should have been given at the time of the quote.** I declined the windshield because its not what we ordered and will give my business to a more ethical one. From this day forward I am done with satellite.


Jennifer C

Date: 04/17/2025

We requested a certain windshield and when came out had an aftermarket windshield. The quote was given then later extra $90 was add which was taxes and recycle fee. That should have been given at the time of the quote. I declined the windshield because its not what we ordered and will give my business to a more ethical one. From this day forward I am done with satellite.

70. Another complaint, dated April 16, 2025, from a consumer identified as "Brenda B," states:

> Safelite Glass repair [redacted] Yesterday, the passenger side front glass exploded out of the window. I immediately called my insurance company, who guided me to Safelite. **My deductible is $495.00, and the price Safelite showed without taxes, was $388.80. Surprise! There is a $39.99 recycling fee for the glass. We have already cleaned up 80% of the glass at least.** I am sure there is some stuck on the door panel, but it can not be much. When I asked the technician, [redacted] (who is a really nice guy and great tech), he said it was a fee negotiated with the insurance company. If I wanted to do it without the insurance negotiated price, it would be more. I went online to Safelite, put all my info in, and it came up the same price. Including the recycling fee. No negotiated discount. I then called [redacted], the McAllen Safelite manager. He told me the same thing [redacted] told me. [redacted] was just repeating what he had been told. I shared that was incorrect info as I had done my homework and knew what the price was. He did not say one word. **I asked him to remove the recycling fee as there was not anything to recycle.** He then said that it was for vacuuming the glass out between the door panels. This is a deceptive practice. First, I am told it is a negotiated price, then I find out that is not true. I am also going to send this information to

[1] All quotes of consumer complaints are presented with original grammar and spelling. Emphasis (bolding) is added. Bracketed indications of redacted material refer to redactions existing on the BBB website.

> the better business bureau. **I understand a recycling fee if there is something to recycle.** I am going to share this review as many places as I can. **I was charged for a service I did not receive.**

**Brenda B**

**Date:** 04/16/2025

Safelite Glass repair [redacted] Yesterday, the passenger side front glass exploded out of the window. I immediately called my insurance company, who guided me to Safelite. My deductible is $495.00, and the price Safelite showed without taxes, was $388.80.Surprise! There is a $39.99 recycling fee for the glass. We have already cleaned up 80% of the glass at least. I am sure there is some stuck on the door panel, but it can not be much.When I asked the technician, [redacted] (who is a really nice guy and great tech), he said it was a fee negotiated with the insurance company. If I wanted to do it without the insurance negotiated price, it would be more. I went online to Safelite, put all my info in, and it came up the same price. Including the recycling fee. No negotiated discount.I then called [redacted], the McAllen Safelite manager. He told me the same thing [redacted] told me. [redacted] was just repeating what he had been told. I shared that was incorrect info as I had done my homework and knew what the price was. He did not say one word.I asked him to remove the recycling fee as there was not anything to recycle. He then said that it was for vacuuming the glass out between the door panels.This is a deceptive practice. First, I am told it is a negotiated price, then I find out that is not true. I am also going to send this information to the better business bureau. I understand a recycling fee if there is something to recycle.I am going to share this review as many places as I can. I was charged for a service I did not receive.

71. A third complaint, dated October 8, 2024, from a consumer identified as "Jerry S," states:

> Sneaky and Snakey Business. **Quote F250 (backglass) Safelite website $650.08. Charged $791.10.** I asked for receipt when paying. Was told it will be emailed. I get home to look at emails and find my $140 charge above quote. I fly out of my chair. I call the first [redacted] curse him out and ask for his managers number. He refuses to give the number, but I get a call from level II manager. **He tells me that I was charged $40 recycling fee. I just happened to watch them throwing my glass and frame into the dumpster, making this manager just a liar.** He tells me they charged me $45 for front window rainx. I tell him I just want them to honor the quote. He offers to remove rainx charge and recycling charge. I tell him to honor the quote. He refuses. He was trying to convince me that him removing the recycling fee and rainx fee was him doing me a favor. i again asked this man to honor the $650 quote. He again refuses. At some point, I had to let the man know that I called USAA (my bank) and disputed the charged. If you do business with a rattlesnake, you will always get bitten. **Bottom Line-They gave me a quote with JUST the price of the window. The added on labor, rainx and recycling after the fact.** Who gives quotes without labor in the quote? The snuck in the charges,

> once my truck was in their shop. Don't play with Rattlesnakes...Negative ten starts.....

**Jerry S**

**Date:** 10/08/2024

Sneaky and Snakey Business. Quote F250(backglass)Safelite website $650.08. Charged $791.10. I asked for receipt when paying. Was told it will be emailed. I get home to look at emails and find my $140 charge above quote. I fly out of my chair. I call the first [illegible] curse him out and ask for his managers number. He refuses to give the number, but I get a call from level II manager. He tells me that I was charged $40 recycling fee. I just happened to watch them throwing my glass and frame into the dumpster, making this manager just a liar. He tells me they charged me $45 for front window rainx. I tell him I just want them to honor the quote. He offers to remove rainx charge and recycling charge. I tell him to honor the quote. He refuses. He was trying to convince me that him removing the recycling fee and rainx fee was him doing me a favor. i again asked this man to honor the $650 quote. He again refuses. At some point, I had to let the man know that I called USAA(my bank) and disputed the charged. If you do business with a rattlesnake, you will always get bitten. Bottom Line-They gave me a quote with JUST the price of the window. The added on labor, rainx and recycling after the fact. Who gives quotes without labor in the quote? The snuck in the charges, once my truck was in their shop. Don't play with Rattlesnakes...Negative ten starts.....

72. A fourth complaint, dated September 9, 2024, from a consumer identified as "Jennifer S," states:

> This is a Bait and [redacted] I called Amica to make a claim for my son's windshield to be replaced. **I was quoted exactly $374.31. I wrote it down. The next day the Safelite van showed up and the gentleman told me I owed $507.** I said no, I owe $374.31. He called his boss who told him to explain to me there are taxes and fees. $140 in taxes and fees? No [redacted] I sent him away. I called Amica who sent me promptly back to Safelite. **That representative told me there are always disposal fees and taxes and other fees NOT included in the quote, the quotes they give out are ONLY for the actual glass replacement. Seriously?** She stated this like I should have known this. Ridiculous. **The very definition of Bait and Switch is to quote one price and then charge a higher price the day of services. This is a Bait and Switch tactic.** I called a local company in [redacted] today and was quoted $255.65, all in, that INCLUDES taxes and disposal and all fees. That is 1/2 the price of the scam Safelite has running. So glad I sent Safelite away and called local. Don't fall for their pricing. They will try to get you for more bc they think you are a captive audience. Call around. Use someone with good [redacted] reviews. There is a reason Safelite has between 1.2 and 3.4 stars universally. Safelite is a terrible company out to get you for every [redacted] they can.

**Jennifer S**

**Date:** 09/09/2024

This is a Bait and [redacted] I called Amica to make a claim for my son's windshield to be replaced. I was quoted exactly $374.31. I wrote it down. The next day the Safelite van showed up and the gentleman told me I owed $507. I said no, I owe $374.31. He called his boss who told him to explain to me there are taxes and fees. $140 in taxes and fees? No [redacted] I sent him away. I called Amica who sent me promptly back to Safelite. That representative told me there are always disposal fees and taxes and other fees NOT included in the quote, the quotes they give out are ONLY for the actual glass replacement. Seriously? She stated this like I should have known this. Ridiculous. The very definition of Bait and Switch is to quote one price and then charge a higher price the day of services. This is a Bait and Switch tactic. I called a local company in [redacted] today and was quoted $255.65, all in, that INCLUDES taxes and disposal and all fees. That is 1/2 the price of the scam Safelite has running. So glad I sent Safelite away and called local. Don't fall for their pricing. They will try to get you for more bc they think you are a captive audience. Call around. Use someone with good [redacted] reviews. There is a reason Safelite has between 1.2 and 3.4 stars universally. Safelite is a terrible company out to get you for every [redacted] they can.

73. A fifth complaint, dated July 26, 2024, from a consumer named “Stephen L,” states:

> **Safelite sent me two identical quotes, one on the day I set up my appointment and the second on the day of my appointment.** Both quotes were identical. However, after I paid with a credit card I was told that my receipt would be sent to me via email. **Once I received the receipt I found that I had been overcharged $39.98**. After calling several times over a two week period **I was finally told that they would not be refunding me the $39.98 because it was a recycling fee for the old windshield. At no time was I ever told that this additional fee would be added to my bill.** If I had been told up front that there would be an additional recycling fee I wouldn’t be feeling like I’ve been ripped off, but that is exactly how I feel.

**Stephen L**

**Date:** 07/26/2024

Safelite sent me two identical quotes, one on the day I set up my appointment and the second on the day of my appointment. Both quotes were identical. However, after I paid with a credit card I was told that my receipt would be sent to me via email. Once I received the receipt I found that I had been overcharged $39.98. After calling several times over a two week period I was finally told that they would not be refunding me the $39.98 because it was a recycling fee for the old windshield. At no time was I ever told that this additional fee would be added to my bill.If I had been told up front that there would be an additional recycling fee I wouldn't be feeling like I've been ripped off, but that is exactly how I feel.

74. These complaints demonstrate that Safelite's practices concerning the recycling fee are consistent, are deceptive, and have harmed consumers.

***Safelite's Recycling Fee Is a Profit Center***

75. Safelite misleads and deceives consumers regarding the true reason that the recycling fee is charged.

76. As discussed above in paragraph 63, Safelite represents on the Confirmation Page that the recycling fee is charged because Safelite "work[s] with a recycling partner to dispose of your window glass and its component parts in a way that doesn't harm the environment."

77. Safelite provides more detail on another part of its Website, albeit one that consumers are unlikely to access before scheduling an appointment for glass replacement services. If, starting from the Website's homepage, the user scrolls down to the bottom of the page, clicks the "Help center" link, then clicks the "Cost, payment, and billing" icon, and then scrolls down about three-quarters of the page, Safelite represents the following:

> **Why is there a disposal or recycling fee?**
>
> Windshield glass has added features like lamination. Unlike regular glass, it can pollute the environment if just thrown in the trash. That's why you can't dispose of it yourself. We work closely with Shark Glass Recycling North America to dispose of your glass and its component parts, and repurpose as much of the material as

> possible into new products. In fact, the carpeting in our home office is made of recycled glass.

78. This purported explanation of the recycling fee—which suggests that the recycling fee is charged only to cover the costs of recycling laminated windshield glass because that type of glass is harmful to the environment and cannot by disposed of by consumers—is misleading in several ways.

79. First, while it is true that windshield glass contains an interlayer of polyvinyl butyral ("PVB") lamination, it is no more harmful to the environment than unlaminated glass. Nor is there any reason consumers "can't" dispose of it themselves. Auto glass with or without lamination may be accepted by local recycling centers.

80. Second, side and back window glass generally does *not* contain PVB or other lamination. Yet Safelite still charges the recycling fee in connection with side or back window glass replacement.

81. Third, the amount of the recycling fee ($39.99) has no connection to Safelite's recycling costs, which are likely only about a tenth of that amount.

82. According to promotional materials distributed by Safelite's recycling partner, Shark Glass Recycling North America ("Shark Glass"), windshields weigh about 32 pounds on average and North American landfills charge around $110 per ton for windshield disposal. This means the landfill disposal cost per windshield is about $1.76.

83. Shark Glass presumably makes windshield recycling economically feasible for glass suppliers like Safelite by charging less than the landfill disposal rate. But even if Shark Glass charges more—indeed, even if Shark Glass charges *double* the landfill disposal rate—it remains that Safelite's cost per windshield is only about $3.52.

84. There also are transportation costs involved. According to a June 2016 report from *MSW Management Journal*, the cost of transporting scrap glass for recycling in the U.S. ranges from $10 to $40 per ton. A more recent November 2023 report from *Recycling Product News* provides a lower estimate of $5 to $20 per metric ton. Using the highest of these estimates, $40 per ton, produces a per-windshield transportation cost of $0.64.

85. It reasonably can be inferred that Safelite's transportation costs are even less than those estimates. A January 2017 *Recycling Today* article about Safelite's glass recycling program stated that "[t]he logistics of collecting the damaged windshields and shipping [them] to the recycling plant were designed to be carbon neutral, using existing freight lanes within the supply chain returning to Safelite's East Coast distribution center." Similarly, in a YouTube video about Safelite's glass recycling program, Deborah Tschofen, identified as Safelite's Recycling Program Lead, explains that the Shark Glass Recycling North America facility in Lavonia, Georgia, is "just up the road" from Safelite's distribution center in Braselton, Georgia, which allows Safelite to "piggyback on existing freight lanes." By using existing freight lanes, Safelite presumably avoids or minimizes any marginal transportation costs that otherwise would be associated with the glass recycling program.

86. Nevertheless, even if Safelite pays Shark Glass double the landfill disposal rate and pays the highest estimated transportation cost of $40 per ton, it remains that Safelite pays only about $4.16 per windshield recycled.

87. Thus Safelite's recycling fee of $39.99 is nearly ***ten times*** its actual recycling costs (even if its costs are assumed to be much higher than they likely are).

88. This makes the recycling fee quite profitable for Safelite. Safelite claims that in 2022, it recycled 58,000 tons of windshield glass, equivalent to about 3,625,000 windshields.

89. Using the assumptions set forth above, that number of windshields produces $144,963,750 in recycling fees against $15,080,000 in costs, for profits of $129,883,750 on an 89.6% margin.

90. This is another way in which Safelite's recycling fee is deceptive and unfair. The amount of the fee charged has no reasonable relationship to Safelite's costs of recycling or disposing of consumers' scrap glass. The purpose of the fee is to generate more profits for Safelite through a fee that is omitted from quoted prices until the consumer is one click away from locking in their appointment.

***Safelite Charges the Recycling Fee Even When It Recycles Nothing***

91. It is egregious that Safelite charges a $39.99 recycling fee against less than $5 in recycling costs. But even more egregious is that Safelite charges the recycling fee when it recycles nothing and incurs $0 in costs.

92. Safelite admits it does not recycle all the scrap glass that it collects from consumers' vehicles in performing glass replacement services.

93. In another obscure section of its Website (accessible from the homepage by scrolling to the bottom, clicking "Why choose Safelite," and then clicking the "Glass recycling" icon) Safelite admits that as of 2022, it recycled only "about 85% of the damaged windshields we collected," and that its "goal is to increase that number to 95%," not 100%.

94. Hence Safelite does not today recycle glass collected from every consumer who pays the recycling fee, and Safelite does not expect it will do so even upon reaching its "goal."

95. And even when Safelite is told directly that the recycling fee should not be charged because nothing was recycled, it charges the fee anyways. As described by "Brenda B" and "Jerry S" (*see* paragraphs 70, 71), consumers who ask Safelite to waive the recycling fee because they witnessed their scrap glass get vacuumed up or thrown into a dumpster are told that they still must

pay it. Those complaints are consistent with the allegations in paragraphs 81 through 90, above, that the true purpose of Safelite's recycling fee is not to cover Safelite's recycling costs, but to generate profits.

96. This is yet another way in which Safelite's recycling fee is deceptive and unfair. Safelite charges a recycling fee in instances where it knows no recycling is performed.

97. Moreover, as Plaintiff Blomenkamp's experience demonstrates, Safelite charges the recycling fee even when the consumer has no scrap glass to be recycled at all.

***Plaintiff Blomenkamp's Experience with Safelite***

98. Plaintiff Blomenkamp is a farmer who lives in St. Clair County, Illinois.

99. In 2022, a grain wagon struck Plaintiff Blomenkamp's 2001 Ford F-450, completely shattering the truck's driver's side back window.

100. Shortly after the collision, Blomenkamp cleaned up the broken glass from around and inside of his truck and disposed of it himself. No glass remained on the window opening of Blomenkamp's truck. The photo below shows the window opening of Blomenkamp's truck with the broken glass cleared and removed:




101. Blomenkamp then covered the truck's back window opening with a plastic bag to keep the truck's interior enclosed until he was ready to get the window replaced.

102. On or about April 25, 2025, Blomenkamp used Safelite's Website to schedule the replacement of his truck's back window glass. Safelite provided Blomenkamp the following Email Quote, which quoted his replacement price at $269.00:




103. After receiving the Email Quote, Blomenkamp continued with the scheduling process and set an appointment for a Safelite mobile technician to replace his truck's back window. The appointment was scheduled for (and ultimately occurred) on May 1, 2025, at Blomenkamp's residence in Freeburg, Illinois.

104. After completing the scheduling process, Blomenkamp received an email with an itemized invoice (shown below). This invoice denominated the amount presented in the Email

Quote ($269.00) as "Parts and labor," and added to that the $39.99 "Recycling" fee, bringing the pretax total cost to $308.99 and the total amount due to $327.49.




105. Upon reviewing the invoice, Blomenkamp naturally understood that the purpose of the recycling fee was to cover the costs of recycling the scrap glass, and believed that because he had no scrap glass capable of being recycled, the fee would not be charged.

106. Blomenkamp called Safelite's customer service hotline to request that the recycling fee be removed. Blomenkamp explained that he had already disposed of all his scrap glass.

Safelite's customer service representative told Blomenkamp that she couldn't do anything about it, because Safelite's policy is that the recycling fee is always charged. The customer service representative told Blomenkamp the best she could do was to give him a 10% discount.

107. Blomenkamp decided to go forward with the appointment—believing, as any reasonable consumer would—that when the Safelite technician saw that there truly was no scrap glass to be recycled, Safelite would agree that it is unfair and deceptive to charge and collect the recycling fee.

108. But that is not what happened. When Blomenkamp asked the technician (identified on Blomenkamp's receipt as "Denys") about removing the recycling fee, the technician told him that the fee could not be removed because it was required by state law.

109. Blomenkamp, a nonlawyer, had no way of determining then and there whether the technician's representation was accurate. Nor was it practical for him to cancel the service after the technician had already arrived. Thus, because of Safelite's deceptive and unfair conduct, Blomenkamp went forward with the replacement services.

110. In truth, Illinois law does not require that Safelite charge a recycling fee in the amount of $39.99 (or in any other amount).

111. Blomenkamp ultimately paid Safelite $297.29. The 10% discount that Blomenkamp was promised was applied to the $269.00 charge (*i.e.*, the amount Safelite represented to Blomenkamp as "Your Quote" in the Email Quote, and then later denominated as "Parts and labor" after Blomenkamp locked in his appointment), but the $39.99 "Recycling" fee remained on his invoice (shown below) without adjustment.




112. Hence Blomenkamp paid the full $39.99 recycling fee even though Safelite performed no recycling services.

113. Moreover, the total amount Blomenkamp paid with the 10% discount ($297.29) applied to “Parts and labor” is $12.18 more than what he would have paid had Safelite simply waived the recycling fee without offering the discount ($285.11).

114. But for Safelite’s unfair and deceptive conduct, Blomenkamp would not have purchased Safelite’s glass replacement services. Had Safelite clearly disclosed before Blomenkamp scheduled his appointment that it charges the $39.99 recycling fee and that the fee is charged regardless of whether recycling services are performed, Blomenkamp would have obtained glass replacement services elsewhere.

115. Blomenkamp’s experience demonstrates the deception and unfairness inherent in Safelite’s practices. Safelite sent Blomenkamp the Email Quote that represented the price of the service as $269.00 to compel him to schedule his appointment. Blomenkamp went ahead and scheduled his appointment and then realized that the recycling fee had been added to the quote that Safelite previously had provided him. Then Safelite lied to Blomenkamp about the recycling fee being required by Illinois law and made him pay the fee in full even though Safelite performed no recycling services.

***Plaintiff Blomenkamp’s Experience Is Not Unique Because—as Safelite Admits—Tempered Glass Shatters on Impact***

116. It reasonably can be inferred that Plaintiff Blomenkamp is just one of many consumers who paid Safelite’s recycling fee even though Safelite did not, and could not have, performed any recycling services.

117. This is because—as Safelite admits—the glass on the sides and back of vehicles is tempered glass that is designed to shatter into tiny chunks when broken.

118. As Safelite explains on the Website:

> Unlike the front windshield, the glass for the back windshield is made in the same way that auto glass is made for the side window, vent window, or quarter glass

> panes: tempered glass.
>
> The back car window glass is strengthened by thermal or chemical treatments so that it can withstand blunt force, but will shatter into tiny, granular chunks of glass instead of shards. This is a feature of tempered glass and is often called "safety glass" for this reason.

119. Because the tempered glass used for side and back vehicle windows is designed to shatter into "tiny, granular chunks," it rarely will remain intact in the windowpane when broken. Rather, it will fall inside or outside the vehicle, and (as in Blomenkamp's case) will be left at the site of the accident or cleaned up by the vehicle's owner to avoid injury.

120. Hence there are no doubt many examples of consumers who (like Blomenkamp) sustained damage to their vehicle's side or back window and who had no scrap glass capable of being recycled, yet who Safelite still charged the recycling fee.

***Safelite's Practices Concerning the Recycling Fee Violate Established Ethical Standards in the Marketing Industry***

121. Safelite's practices concerning the recycling fee violate the established ethical standards of the marketing industry as recognized by the American Marketing Association ("AMA") and the Association of National Advertisers ("ANA").

122. The AMA describes itself as "the leading global professional marketing association," serving "students and practitioners" as well as "executives and academics." The AMA publishes a number of scholarly journals, including *Journal of Marketing*, *Journal of Marketing Research*, *Journal of Public Policy and Marketing*, *Journal of International Marketing*, and *Journal of Interactive Marketing*.

123. The AMA publishes a Statement of Ethics which recognizes that "the marketing community not only serves organizations but also acts as a steward of society in creating and facilitating the transactions and experiences that drive the greater economy."

124. The AMA's Statement of Ethics sets out three "Ethical Norms"—"ethical principles informed by society"—which include "consciously avoiding harmful actions or omissions," "striving for transparency and fairness in all aspects of the marketing ecosystem," and "affirming the[ ] core values" of "honesty," "responsibility," and "transparency."

125. Safelite's practices concerning the recycling fee violate the AMA's ethical norms because, as described throughout this Class Action Complaint, Safelite is not transparent, honest, or fair in how it discloses and describes the recycling fee and its purpose.

126. The ANA was founded in 1910 and describes itself as "the U.S. advertising industry's oldest and largest trade association." The ANA says that it "provides the advertising community with a voice before Congress, state legislatures, Federal regulatory agencies, and the courts."

127. The ANA includes the ANA Center for Ethical Marketing, a "self-regulation" entity that aims to help businesses "build brand and consumer trust through best practices, guidelines, guidance, compliance services, and committees."

128. The ANA Center for Ethical Marketing publishes the ANA Marketing Ethics Code, which is "an ethical framework" that "is intended to provide generally accepted principles of conduct to individuals and entities involved in data-driven marketing and advertising."

129. The ANA Marketing Ethics Code includes fifteen "Member Principles" that describe what "[a]n ethical and accountable marketer" should do. They include "[c]learly, honestly, and accurately represent[ing] their products, services, terms, and conditions"; "[d]eliver[ing] their products, services, and experiences as represented"; and "prevent[ing] misleading or deceptive marketing and fraud from occurring on their platform or in their name."

130. Furthermore, Article 1 of the ANA Marketing Ethics Code ("Advertising and Marketing Offers: Supporting Claims") provides that "offers should be clear, honest, and complete so that the consumer may know the nature of what is being offered, the price, [and] the terms of payment (including all mandatory and extra charges)." To be avoided are "so-called 'dark patterns' . . . that could mislead consumers" like "[b]ait and switch," "[h]idden costs that are not disclosed to a potential purchaser," and "burying important information in hard-to-read disclosures."

131. Safelite's practices concerning the recycling fee violate the ANA Marketing Ethics Code because, as described throughout this Class Action Complaint, Safelite is not clear, honest, or complete in how it discloses and describes the recycling fee and its purpose.

***Safelite Knows and Intends that it Deceives Reasonable Consumers***

132. Safelite intends that consumers rely on the price represented on the Quote Page or in the Email Quote to induce them to complete the scheduling process.

133. Safelite knows that the price represented on the Quote Page or in the Email Quote does not accurately represent the price that will be charged, because Safelite knows it will also charge the $39.99 recycling fee regardless of whether the consumer needs or wants recycling services, and regardless of whether Safelite performs recycling services.

134. Safelite knows and intends that consumers who notice that the recycling fee has been added on the Confirmation Page or on the invoice they receive after scheduling their appointment will be reluctant to accept the time already consumed by the scheduling process as a sunk cost, and will agree to pay the previously-concealed $39.99 fee rather than cancel their appointment and shop for a better price.

135. Safelite intends that consumers rely on the denomination of the recycling fee as such, and on the explanations it provides for the recycling fee (discussed in paragraphs 63 and

77), to induce consumers' reasonable belief that the amount of the recycling fee is reasonably related to the costs of recycling their damaged glass.

136. Safelite knows that the denomination of the recycling fee as such, and the explanations it provides for the recycling fee (discussed in paragraphs 63 and 77) are inaccurate and misleading, in that the $39.99 recycling fee is not reasonably related to the costs of recycling consumers' scrap glass.

137. Safelite intends that consumers rely on the denomination of the recycling fee as such, and on the explanations it provides for the recycling fee (discussed in paragraphs 63 and 77) to induce consumers' reasonable belief that the recycling fee will not be charged if the consumer does not need or want recycling services (because, *e.g.*, they have no damaged glass to be recycled), or if Safelite does not otherwise perform recycling services.

138. Safelite knows that the denomination of the recycling fee as such, and the explanations it provides for the recycling fee (discussed in paragraphs 63 and 77) are inaccurate and misleading, in that it charges the recycling fee regardless of whether the consumer needs or wants recycling services, or whether Safelite performs recycling services.

## CLASS DEFINITIONS AND ALLEGATIONS

139. Consistent with Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of themselves and the proposed **Nationwide Class**:

> All persons who in the United States purchased glass replacement services from Safelite and paid a recycling fee within the applicable statute of limitations and before the date notice is disseminated.

140. Consistent with Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of themselves and the proposed **Illinois Class**:

> All persons who in the State of Illinois purchased glass replacement services from Safelite and paid a recycling fee within the applicable statute of limitations and before the date notice is disseminated.

141. Consistent with Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of themselves and the proposed **Multistate Consumer Class**:

> All persons who in the State of Illinois or any state with similar laws[2] purchased glass replacement services from Safelite and paid a recycling fee within the applicable statute of limitations and before the date notice is disseminated.

142. Excluded from the Nationwide Class, Illinois Class, and Multistate Consumer Class (collectively, the "Classes") are: (i) Defendants, any entity in which any Defendant or its subsidiaries or affiliates have a controlling interest, and Defendants' legal representatives, predecessors, successors, and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives, and their family members; (iv) all persons who timely elect to be excluded from the Classes; and (v) the Judge to whom this case is assigned, the Judge's staff, and any member of the Judge's immediate family.

143. **Numerosity.** Each Class is numerous enough that joinder of all members is impracticable. Safelite provides glass replacement services to millions of consumers in the United States each year. In Illinois alone, Safelite has twenty-five service locations, and reasonably can

---

[2] Subject to discovery and further investigation, other states with similar consumer protection laws under the facts of this case (the "State Consumer Protection Laws") include (without limitation): California (Cal. Bus. & Prof. Code § 17200 *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware (Del. Code tit. 6, §§ 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ILCS § 505/1, *et seq.*); Maryland (Md. Code Ann., Comm. Law § 13-301, *et seq.*); Minnesota (Minn. Stat. § 325F.68, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0903, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania (73 Pa. Stat. § 201-1 *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Codified Laws § 37-24-1, *et seq.*); Utah (Utah Code § 13-11-1, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

be assumed to provide glass replacement services to thousands of Illinois consumers annually. The exact number of Class members for any of the Classes presently is unknown to Plaintiff and cannot be ascertained by Plaintiff without discovery, but exceeds that which for individual joinder is practicable.

144. **Commonality and Predominance.** There are questions of law and fact common to the Classes which can be resolved through common evidence and predominate over any questions affecting only individual members. These questions include, without limitation:

a. Whether Safelite charges those who purchase glass replacement services a mandatory recycling fee;

b. Whether Safelite has a policy or practice of presenting the total cost of its glass replacement services in a manner likely to deceive reasonable consumers;

c. Whether Safelite has a policy or practice of only revealing the true costs of its services after customers have expended substantial efforts to receive misleading price quotes and scheduling an appointment;

d. Whether Safelite misrepresents the purpose of the recycling fee;

e. Whether the recycling fee is reasonably related to any costs Safelite incurs in recycling or disposing of consumers' auto glass;

f. Whether Safelite profits from the recycling fee;

g. Whether Safelite has a policy or practice of charging the recycling fee even when Safelite performs no recycling services; and

h. Whether Safelite has a policy or practice of charging the recycling fee even if the Classes' members have no glass to recycle or dispose of.

145. **Typicality.** Plaintiff's claims are typical of the Classes' members' claims in that both Plaintiff and the Classes' other members were injured through Safelite's substantially uniform practices concerning the recycling fee. Plaintiff's claims and those of the Classes' other members arise from the same operative facts and are based on the same legal theories.

146. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff's counsel is competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of any of the Classes, and Safelite has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so.

147. **Superiority.** Class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the Classes are likely small relative to the burden and expense of individual prosecution. It thus would be virtually impossible for the individual members of the Classes to obtain effective relief for their injuries. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because litigating the large number of individual claims across separate forums would increase the delay and expense to all parties. By contrast, class treatment allows for economies of scale in litigation and uniform adjudication of the issues.

148. Likewise, certain issues may be appropriate for certification under Rule 23(c)(4) of the Federal Rules of Civil Procedure because their resolution would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### COUNT I
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2): Deceptive Conduct
### (On Behalf of Plaintiff and the Illinois Class)

149. Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein.

150. In Illinois, the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") prohibits the "use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act.'"

151. Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 ("UDTPA"), in turn, provides that a "person engaged in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"; "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(9) advertises goods or services with intent not to sell them as advertised"; or "(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

152. The ICFA was enacted to protect consumers from those who engage in false, misleading, or deceptive acts or practices in the conduct of any trade or commerce.

153. Plaintiff is a "consumer" as defined under 815 ILCS 505/1(e).

154. Plaintiff's transaction with Safelite for auto glass replacement is "trade" or "commerce" as defined under 815 ILCS 505/1(f).

155. Safelite violated the ICFA by, within Illinois, engaging in the false, misleading, or deceptive practices described throughout this Class Action Complaint and proscribed by the ICFA, 815 ILCS 505/2, and by incorporation therein, the UDTPA, 815 ILCS 510/2. Safelite's false, misleading, or deceptive practices concerning the recycling fee include both affirmative misrepresentations and the concealment or omission of material facts. Those false, misleading, or deceptive practices include (without limitation):

a. representing the price of glass replacement services when not intending to sell them at that price;

b. concealing the amount of the recycling fee until after the consumer has expended substantial time and effort in attempting to schedule glass replacement services;

c. concealing that the recycling fee is mandatory and is charged even when no recycling services are performed;

d. representing the recycling fee as being related to the costs of recycling consumers' damaged glass;

e. denominating the recycling fee as such when neither its amount nor its purpose is related to the costs of recycling or the provision of recycling services;

f. representing that Safelite "work[s] with a recycling partner to dispose of [consumers'] window glass and component parts" when no such services are performed;

g. representing that Safelite "recycle[s] all materials that can be repurposed" when it does not do so;

h. representing that the recycling fee is related to consumers' glass having "added features like lamination" when charging the fee for glass that has no such added features;

i. representing that consumers "can't" dispose of their auto glass themselves;

j. representing that the recycling fee is required to be charged under Illinois law.

156. Safelite's false, misleading, and deceptive practices concerning the recycling fee have deceived or misled Plaintiff and the Class members.

157. Safelite's false, misleading, and deceptive practices concerning the recycling fee were material to Plaintiff and the Class members' decision to purchase glass replacement services from Safelite.

158. But for Safelite's false, misleading, and deceptive practices concerning the recycling fee, Plaintiff and the Class members would not have ordered glass replacement services from Safelite or would not have paid the recycling fee.

159. Safelite's false, misleading, and deceptive practices concerning the recycling fee induced Plaintiff and the Class members to order glass replacement services from Safelite and to pay the recycling fee to their detriment and to Safelite's benefit.

160. Safelite knows and intends that its practices concerning the recycling fee mislead and deceive consumers, but continues those practices despite knowledge of the deception and the harm that it causes, and thus acts in willful and wanton disregard of Plaintiff's and the Class members' rights.

161. As a direct and proximate result of Safelite's false, misleading, and deceptive practices concerning the recycling fee, Plaintiff and Class members suffered actual damages in

that they paid Safelite more than they otherwise would have, including (without limitation) paying more than the value represented in the recycling fee.

162. As a result of Safelite's violations of the ICFA, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other relief available under applicable law.

**COUNT II**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**(815 ILCS 505/2): Unfair Conduct**
**(On Behalf of Plaintiff and the Illinois Class)**

163. Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein.

164. The ICFA also prohibits unfair methods of competition and unfair practices, including those recognized as such by the Federal Trade Commission and federal courts interpreting Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

165. The ICFA was enacted to protect consumers from those who engage in unfair acts or practices in the conduct of any trade or commerce.

166. Plaintiff is a "consumer" as defined under 815 ILCS 505/1(e).

167. Plaintiff's transaction with Safelite for auto glass replacement is "trade" or "commerce" as defined under 815 ILCS 505/1(f).

168. Safelite violated the ICFA by, within Illinois, engaging in the unfair practices described throughout this Class Action Complaint and proscribed by the ICFA, 815 ILCS 505/2. Those unfair practices include (without limitation):

a. disclosing the amount of the recycling fee only after the consumer has expended substantial time and effort in attempting to schedule glass replacement services;

b. charging the recycling fee in an amount that has no relationship to the cost or value of the services performed, if any;

c. charging the recycling fee when no recycling services are performed;

d. charging the recycling fee when no recycling services are capable of being performed.

169. Safelite's unfair practices concerning the recycling fee offend Illinois' public policy; are immoral, unethical, oppressive, or unscrupulous; and cause substantial injury to consumers, including Plaintiff and the Class members.

170. Safelite's unfair practices concerning the recycling fee were material to Plaintiff and the Class members' decision to purchase glass replacement services from Safelite.

171. But for Safelite's unfair practices concerning the recycling fee, Plaintiff and the Class members would not have ordered glass replacement services from Safelite or would not have paid the recycling fee.

172. Safelite's unfair practices concerning the recycling fee induced Plaintiff and the Class members to order glass replacement services from Safelite and to pay the recycling fee to their detriment and to Safelite's benefit.

173. Safelite knows that its practices concerning the recycling fee are unfair, but continues those practices despite knowledge of the unfairness and the harm that it causes, and thus acts in willful and wanton disregard of Plaintiff's and the Class members' rights.

174. As a direct and proximate result of Safelite's unfair practices concerning the recycling fee, Plaintiff and Class members suffered actual damages in that they paid Safelite more than they otherwise would have, including (without limitation) paying more than the value represented in the recycling fee.

175. As a result of Safelite's violations of the ICFA, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other relief available under applicable law.

**COUNT III**
**Violation of State Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multistate Consumer Class)**

176. Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein.

177. Plaintiff and Class members have been injured as a result of Safelite's violations of the State Consumer Protection Laws as defined above in paragraph 141 and footnote 2, which also provide redress to Plaintiff and Class members injured through Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee.

178. Safelite's practices concerning the recycling fee described above and throughout this Class Action Complaint violate the State Consumer Protection Laws of each of the jurisdictions comprising the Multistate Consumer Class.

179. Safelite violated the State Consumer Protection Laws of each of the jurisdictions comprising the Multistate Consumer Class through the conduct described in paragraphs 155 and 168 above, and elsewhere throughout this Class Action Complaint.

180. Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee have deceived or misled Plaintiff and the Class members; they also offend public policy; are immoral, unethical, oppressive, or unscrupulous; and cause substantial injury to consumers, including Plaintiff and the Class members.

181. Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee were material to Plaintiff and the Class members' decision to purchase glass replacement services from Safelite.

182. But for Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee, Plaintiff and the Class members would not have ordered glass replacement services from Safelite or would not have paid the recycling fee.

183. Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee induced Plaintiff and the Class members to order glass replacement services from Safelite and to pay the recycling fee to their detriment and to Safelite's benefit.

184. Safelite knows that its practices concerning the recycling fee are false, misleading, deceptive, and unfair, but continues those practices despite knowledge of the deception, the unfairness, and the resultant harm, and thus acts in willful and wanton disregard of Plaintiff's and the Class members' rights.

185. As a direct and proximate result of Safelite's false, misleading, deceptive, and unfair practices concerning the recycling fee, Plaintiff and Class members suffered actual damages in that they paid Safelite more than they otherwise would have, including (without limitation) paying more than the value represented in the recycling fee.

186. As a result of Safelite's violations of the State Consumer Protection Laws, Plaintiff and Class members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other relief available under applicable law.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

187. Plaintiff incorporates by reference all preceding factual allegations as if fully set forth herein.

188. Plaintiff conferred upon Safelite a benefit in the form of the $39.99 recycling fee.

189. Safelite accepted that benefit to Plaintiff's detriment.

190. Safelite's retention of the benefit is without justification and contrary to fundamental principles of justice, equity, and good conscience because Safelite provided no recycling services or other services reasonably related to the fee or its amount.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other members of the proposed Classes, respectfully requests that the Court enter judgment in Plaintiff's favor and against Safelite as follows:

A. Certifying the Classes, designating Plaintiff as representative of the Classes, and appointing Plaintiff's counsel as counsel for the Classes;

B. Awarding actual damages, compensatory damages, and punitive damages in an amount to be determined at trial;

C. Ordering restitution and disgorgement of all profits and unjust enrichment that Safelite obtained from Plaintiff and the Classes' members as a result of Safelite' unlawful, unfair, and deceptive conduct;

D. Ordering Safelite to pay attorneys' fees and litigation costs to Plaintiff and the Classes' members as provided for under ICFA, the State Consumer Protection Laws, and other applicable law;

E. Ordering Safelite to pay pre- and post-judgment interest on any amounts awarded;

F. Ordering such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 15, 2026

Respectfully submitted,

**THE DRISCOLL FIRM, P.C.**

By: * /s/ Matthew J. Limoli*

Matthew J. Limoli, #6328051
434 Fayetteville Street, Ste. 560
Raleigh, North Carolina 27601
Phone: (919) 582-6516
Fax: (314) 932-3233
matthew@thedriscollfirm.com

**THE DRISCOLL FIRM, LLC**
John J. Driscoll, #6276464
1311 Avenida Juan Ponce de Leon, Ste. 501
San Juan, Puerto Rico 00907
Phone: (314) 222-2605
Fax: (314) 932-3233
john@jjlegal.com

*Attorneys for Plaintiff*