IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN BLOMENKAMP, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SAFELITE GROUP, INC., et al.,**<br><br>**Defendants.** | **Case No. 3:26-cv-00853-DWD**<br><br>**Judge: David W. Dugan** |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 1

A. When Scheduling Service to Replace a Window on His Truck, Blomenkamp Agrees to Safelite's Terms of Service, Including Arbitration, Two Times ..... 1

B. Safelite's Terms of Service Contain a Binding Arbitration Agreement Delegating All Disputes, Including Arbitrability, to Arbitration ..... 4

C. Blomenkamp Does Not Exercise His Right to Opt Out of Arbitration ..... 4

D. Blomenkamp Brings This Suit in Violation of the Arbitration Agreement ..... 5

LEGAL STANDARD ..... 5

ARGUMENT ..... 5

A. A Valid Arbitration Agreement Exists ..... 6

B. Blomenkamp Did Not Opt Out of the Arbitration Agreement ..... 9

C. The Arbitration Agreement Delegates All Other Questions to Arbitration ..... 9

D. The Court Should Stay the Case Pending Arbitration ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ambrosius v. Chi. Athletic Clubs, LLC*,
203 N.E.3d 239 (Ill. App. Ct. 2021) ........................................ 6, 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................ 6

*Babcock v. Neutron Holdings, Inc.*,
454 F. Supp. 3d 1222 (S.D. Fla. 2020) ........................................ 8

*Baugus v. Event Tickets Ctr., Inc.*,
2026 WL 866840 (S.D.N.Y. Mar. 30, 2026) ........................................ 8

*Bergman v. Best Buy Co.*,
No. 3:25-cv-01318-DWD (S.D. Ill. Feb. 3, 2026) ........................................ 8

*Dahdah v. Rocket Mortg., LLC*,
166 F.4th 556 (6th Cir. 2026) ........................................ 8

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ........................................ 8

*DeWitt Cnty. Pub. Bldg. Comm'n v. DeWitt Cnty.*,
128 Ill. App. 3d 11 (4th Dist. 1984) ........................................ 9

*Dhruva v. CuriosityStream, Inc.*,
131 F.4th 146 (4th Cir. 2025) ........................................ 8

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ........................................ 7

*Driskill v. Experian Info. Sols., Inc.*,
753 F. Supp. 3d 839 (N.D. Cal. 2024) ........................................ 8

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020) ........................................ 8

*Gupta v. Morgan Stanley Smith Barney, LLC*,
934 F.3d 705 (7th Cir. 2019) ....................................................................................6

*Hamera v. Best Buy Co.*,
790 F. Supp. 3d 664 (N.D. Ill. 2025) ..........................................................................8

*Harbers v. Eddie Bauer, LLC*,
2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ........................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)..........................................................................................5, 9, 10

*Hosseini v. Upstart Network, Inc.*,
2020 WL 573126 (E.D. Va. Feb. 5, 2020)....................................................................8

*Johnson v. Uber Techs.*,
2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ...............................................................7

*Matricciani v. Am. Homeowner Pres., Inc.*,
718 F. Supp. 3d 825 (N.D. Ill. 2024) ..........................................................................8

*Maynez v. Walmart, Inc.*,
479 F. Supp. 3d 890 (C.D. Cal. 2020) ........................................................................8

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..........................................................................................6, 7

*Midland Hotel Corp. v. Reuben H. Donnelley Corp.*,
515 N.E.2d 61 (Ill. 1987) ............................................................................................6

*Myers v. Experian Info. Sols. Inc.*,
734 F. Supp. 3d 912 (D. Ariz. 2024) ..........................................................................8

*Purchase v. FaceApp Inc.*,
2024 WL 4164753 (S.D. Ill. Sept. 12, 2024)...............................................................8

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)..........................................................................................5, 9, 10

*Selden v. Airbnb, Inc.*,
4 F.4th 148 (D.C. Cir. 2021)........................................................................................8

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................................................................................................10

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ....................................................................................5

*Topolewski v. Experian Data Corp.*,
736 F. Supp. 3d 818 (C.D. Cal. 2024) ......................................................................8

*Warner v. Real ID, Inc.*,
819 F. Supp. 3d 931 (N.D. Ill. 2026) ........................................................................8

**STATUTES**

9 U.S.C. §§ 1–16..........................................................................................................1

9 U.S.C. § 2.................................................................................................................5

9 U.S.C. § 3...........................................................................................................5, 10

815 Ill. Comp. Stat. Ann. 333/7 ...................................................................................6

Pursuant to Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 1–16, and for the reasons below, Defendants Safelite Group, Inc. and Safelite Fulfillment, LLC (collectively, "Safelite"), through undersigned counsel, respectfully move this Court to compel Plaintiff John Blomenkamp to submit all of his claims to arbitration before the American Arbitration Association, and to otherwise stay this case.

## INTRODUCTION

This case belongs in arbitration. When scheduling service with Safelite to replace a window on his truck, Plaintiff John Blomenkamp agreed to Safelite's Terms of Service—including an Arbitration Agreement—two separate times. Each time, the Terms of Service were hyperlinked next to a clickable button, and Blomenkamp was expressly informed that by clicking he agreed to those Terms. Courts routinely enforce these agreements and compel arbitration.

The Arbitration Agreement contains a delegation clause that commits all threshold questions, including the scope and enforceability of the Arbitration Agreement, to the arbitrator. This Court need only determine whether a valid agreement exists. It does. As a result, and as explained below, the Court should grant Safelite's motion, compel arbitration, and stay this case.

## BACKGROUND

### A. When Scheduling Service to Replace a Window on His Truck, Blomenkamp Agrees to Safelite's Terms of Service, Including Arbitration, Two Times.

Blomenkamp alleges that a back window on his truck shattered in 2022. Compl. (ECF 1) ¶¶ 6, 99. Some three years later, on April 25, 2025, Blomenkamp decided to replace the window. *Id.* ¶¶ 6, 102. He used Safelite's website to schedule service, and agreed to Safelite's Terms of Service, including an Arbitration Agreement, two separate times.

Mr. Blomenkamp first agreed to the Terms of Service to receive a quote. After submitting his vehicle information, Blomenkamp reached a webform asking him to enter his email and hit a

"Send" button in order to receive a quote. *See* Ex. A, Decl. of T. Simeone ("Simeone Decl."), ¶¶ 7–9. Immediately under the "Send" button was the following language: "By selecting 'Send,' I agree to Safelite's terms of use, privacy policy and to receive communications from Safelite about my vehicle." *Id.* ¶ 9. The phrase "terms of use" was displayed in blue text as a hyperlink that, when clicked, presented the full text of the Terms of Service and the Arbitration Agreement:




*Id.* ¶ 10; *id.* Ex. 3. Blomenkamp entered his email address and clicked "Send," thereby accepting and agreeing to the Terms of Service. *See id.* ¶ 12. Blomenkamp admits in the Complaint that Safelite subsequently sent him an "Email Quote," Compl. ¶ 102, and includes a screenshot of that email—an email he "could not have received" without clicking "Send" and agreeing to the Terms of Service. Simeone Decl. ¶ 12; *compare id.* Ex. 4 (full copy of email quote), *with* Compl. ¶ 102 (screenshot of same email quote).

Mr. Blomenkamp again agreed to the Terms of Service in order to receive text message updates from Safelite. Later in the scheduling process, a webform asked for Blomenkamp's phone number and whether he wanted to receive text updates about his scheduled service. *See* Simeone Decl. ¶ 13. The webform gave him two options: "Yes" or "No." *Id.* ¶ 14. Beneath these options was the following disclosure: "By selecting 'Yes,' I give my electronic signature and consent to receive text messages about my vehicle, service, promotional offers, and product updates from Safelite AutoGlass at my telephone number submitted here[.] . . . I also agree to Safelite's Privacy Policy and Terms of Use." *Id.* Once again, the phrase "Terms of Use" was displayed in blue text as a hyperlink. *Id.* ¶ 15.




*Id.* Ex. 5. Blomenkamp entered his phone number, clicked "Yes," and subsequently received text messages about his appointment, confirming he again agreed to Safelite's Terms of Service. *Id.*

¶¶ 18–20;[1] *see also id.* Ex. 6 (text messages).[2] Safelite ultimately repaired Blomenkamp's window on May 1, 2025. *See* Compl. ¶ 103; *see also* Simeone Decl. Ex. 6.

### B. Safelite's Terms of Service Contain a Binding Arbitration Agreement Delegating All Disputes, Including Arbitrability, to Arbitration.

Safelite's Terms of Service contain an Arbitration Agreement that requires disputes to be resolved in arbitration:

> You and we agree that any disputes between us (including any disputes between you and a third-party agent of Safelite) will be resolved through binding and final arbitration and not in a court, except that you may assert claims in small claims court if your claims qualify. This includes, but is not limited to, (a) any dispute, claims, or controversy arising out of or relating to any part of the Terms, (b) the existence, breach, termination, enforcement, interpretation or validity thereof; or (c) your access to or use of the Site's services or products at any time. Such dispute shall be submitted to the American Arbitration Association ("AAA") for individual arbitration in the county of your billing address . . . and shall be before one arbitrator. The arbitration shall be administered by the AAA pursuant to its Consumer Arbitration Rules and Procedures, only as modified by this agreement.

Ex. B, Decl. of T. Schneider ("Schneider Decl."), Ex. 8 ("Terms"), § 25.1. The Arbitration Agreement also contains a delegation clause, giving the arbitrator "exclusive authority" over all issues relating to the interpretation, applicability, and enforceability of the Arbitration Agreement along with "all threshold arbitrability issues." *Id.*

### C. Blomenkamp Does Not Exercise His Right to Opt Out of Arbitration.

The Terms of Service provided Mr. Blomenkamp with the right to opt out of arbitration. Specifically, Section 25.7 provides that customers may decline the arbitration agreement by emailing Legal@Safelite.com and providing certain information "no later than 30 days after the

---

[1] While his Complaint makes no mention of it, this was not the first time Mr. Blomenkamp went through this process. In February 2025, he submitted his email address and received an email quote for a different vehicle. *See id.* ¶ 22 & Ex. 7. He also agreed to receive text messages, and did in fact receive a text message, in February 2025. *See id.* ¶ 21 & Ex. 6.

[2] Safelite has redacted Mr. Blomenkamp's telephone number in Exhibit 6.

date you first accept these Terms." Terms § 25.7. Safelite's records confirm that Blomenkamp never exercised his right to opt out of arbitration. *See* Schneider Decl. ¶ 13.

### D. Blomenkamp Brings This Suit in Violation of the Arbitration Agreement.

On June 15, 2026, Blomenkamp filed this action in federal court against Safelite Group, Inc. and Safelite Fulfillment, LLC (together, "Safelite"). Safelite Fulfillment, LLC is a named party in the Terms of Service under its trade name "Safelite AutoGlass," while Safelite Group, Inc., is a "related and affiliated entit[y]." Terms § 1. And Blomenkamp's allegations arise from services booked through Safelite's website, as well as the booking process itself. Therefore, Blomenkamp filed this action in violation of his agreement to arbitrate with both Defendants.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Once a court is "satisfied" that an action is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." *Id.* § 3; *see Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (the FAA "mandates" enforcement of valid arbitration agreements). When, as here, an arbitration agreement "delegates the arbitrability question to an arbitrator," the only question is whether an agreement to arbitrate exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (explaining that in such situations courts have "no power to decide the arbitrability issue"); *see Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (same).

## ARGUMENT

Blomenkamp agreed to Safelite's Terms of Service and the Arbitration Agreement *two separate times*. The Arbitration Agreement delegates all threshold arbitrability issues to an arbitrator. And Blomenkamp never opted out. As a result, the Court should compel arbitration.

### A. A Valid Arbitration Agreement Exists.

The FAA reflects "a liberal federal policy favoring arbitration" and "the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts "must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.*

Contract formation under Illinois law "requires only a manifestation of mutual assent." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019). Courts evaluate contract formation using an "objective theory" under which "'intent to manifest assent . . . is revealed by outward expressions such as words and acts.'" *Id.* (citation omitted). In other words, "the parties' objective conduct, not their subjective intent, determines whether [they] agreed to mandatory arbitration." *Id.* at 712; *see Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) (explaining that parties need not "share the same subjective understanding" of the contract).

Illinois law has long recognized contract formation through electronic agreements. *See, e.g.*, Uniform Electronic Transactions Act, 815 Ill. Comp. Stat. Ann. 333/7 (providing that a contract may not be denied legal effect solely because an electronic record was used in its formation). As relevant here, Illinois courts sort electronic agreements into three categories:

- *Clickwrap* agreements present the user with the terms of service and then require the user to click "I agree."
- *Browsewrap* agreements provide hyperlinks to terms of service on the website but require no affirmative action by the user.
- *Hybrid* or *sign-in-wrap* agreements inform the user of the terms of service, make them available, and "advise the user that he or she is agreeing to the terms of service when registering or signing up."

*Ambrosius v. Chi. Athletic Clubs, LLC*, 203 N.E.3d 239, 250–51 (Ill. App. Ct. 2021) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017)).

Courts routinely enforce hybrid or "sign-in-wrap" agreements. A customer agrees to terms of service through such an agreement where: (1) he had clear notice of the terms to which he would be bound by taking an affirmative action; and (2) he took the affirmative action. *See Domer v. Menard, Inc.*, 116 F.4th 686, 700 (7th Cir. 2024); *Johnson v. Uber Techs.*, 2018 WL 4503938, at *4–5 (N.D. Ill. Sept. 20, 2018). In *Meyer*, for example, Uber's registration process required users to click "REGISTER" on a screen stating, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY." *Meyer*, 868 F.3d at 78–79. The Second Circuit held that this agreement was enforceable because users unambiguously assented to Uber's terms of service. *See id.* They received "a clear prompt directing [them] to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 79. That remained true even if "many users will not bother reading the additional terms," because "that is the choice the user makes." *Id.*

Illinois courts follow *Meyer*'s framework. In *Ambrosius*, for example, the Illinois Court of Appeals upheld a hybrid agreement based on the website stating, directly above a "Sign Up" button, that "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service." 203 N.E.3d at 253. As the court explained, this agreement was "very similar to others that have been found sufficient to form a contract." *Id.* at 252.

This case is materially indistinguishable from *Ambrosius* and *Meyer*. At multiple points during the scheduling process, Safelite's online scheduling tool displays express language stating that by clicking a button the user agrees to Safelite's Terms of Service, and the Terms are hyperlinked in blue text next to the button. This design is the same as the interfaces enforced in *Meyer* and *Ambrosius*. *See also Johnson*, 2018 WL 4503938, at *5 (enforcing arbitration agreement in similar circumstances). If anything, this case is easier because Mr. Blomenkamp

agreed to Safelite's Terms of Service *multiple times*. *Cf. Bergman v. Best Buy Co.*, No. 3:25-cv-01318-DWD, slip op. at 14–16 (S.D. Ill. Feb. 3, 2026) (Dugan, J.) (compelling arbitration based on clickwrap agreement where user clicked button after being told that clicking constituted assent to terms of service). This Court and courts around the country routinely enforce near-identical hybrid agreements. *See, e.g.*, *Purchase v. FaceApp Inc.*, 2024 WL 4164753, at *8 (S.D. Ill. Sept. 12, 2024) (finding arbitration agreement enforceable where terms of service were hyperlinked with a disclosure that an affirmative action by consumer constituted assent to the terms and consumer took that action); *Warner v. Real ID, Inc.*, 819 F. Supp. 3d 931, 934–35 (N.D. Ill. 2026) (same); *Hamera v. Best Buy Co.*, 790 F. Supp. 3d 664, 677–78 (N.D. Ill. 2025) (same).[3]

The remaining elements of contract formation (offer, acceptance, consideration) are easily met. Twice Safelite made an offer—to send Mr. Blomenkamp a quote and to send him text updates—conditioned on agreement to the Terms of Service that were made available to him. *See Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 836 (N.D. Ill. 2024). Twice Blomenkamp clicked a button and accepted the Terms. *Id.* Each time, Blomenkamp received a tangible benefit he would not have otherwise received: a quote and text message updates about his service appointment. If that were not enough (it is), the mutual agreement to arbitrate claims itself

---

[3] *See also Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 576–77 (6th Cir. 2026) (same); *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (same); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 116–17 (2d Cir. 2025) (same); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156–57 (D.C. Cir. 2021) (same); *Baugus v. Event Tickets Ctr., Inc.*, 2026 WL 866840, at *12–16, 23 (S.D.N.Y. Mar. 30, 2026) (same); *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 844–45 (N.D. Cal. 2024) (same); *Topolewski v. Experian Data Corp.*, 736 F. Supp. 3d 818, 824 (C.D. Cal. 2024) (same); *Myers v. Experian Info. Sols. Inc.*, 734 F. Supp. 3d 912, 920–21 (D. Ariz. 2024) (same); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 897–98 (C.D. Cal. 2020) (same); *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1231–34 (S.D. Fla. 2020) (same); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830–33 (S.D.N.Y. 2020) (same); *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at *5 (E.D. Va. Feb. 5, 2020) (same); *Harbers v. Eddie Bauer, LLC*, 2019 WL 6130822, at *6–7 (W.D. Wash. Nov. 19, 2019) (same).

constitutes valid consideration. *See id.* at 836–37; *DeWitt Cnty. Pub. Bldg. Comm'n v. DeWitt Cnty.*, 128 Ill. App. 3d 11, 24 (4th Dist. 1984).

In sum, Blomenkamp agreed to the Terms of Service and the Arbitration Agreement.

### B. Blomenkamp Did Not Opt Out of the Arbitration Agreement.

The Terms of Service provided a clear right to opt out of arbitration. Section 25.7 allows customers to decline the Arbitration Agreement by emailing Legal@Safelite.com "no later than 30 days after the date you first accept these Terms." Blomenkamp did not opt out and thus remains bound by the Arbitration Agreement. *See* Schneider Decl. ¶ 13.

### C. The Arbitration Agreement Delegates All Other Questions to Arbitration.

Because an agreement to arbitrate exists, this case must go to arbitration. While a court ordinarily may resolve challenges to an arbitration agreement's validity, enforceability, and scope, the parties may agree to delegate those threshold issues to the arbitrator rather than the court. *See Rent-A-Center*, 561 U.S. at 68–69. A delegation provision is "simply an additional, antecedent agreement" that a federal court must enforce. *Id.* at 70. When an agreement has such a provision, courts have "no power to decide the arbitrability issue." *Henry Schein*, 586 U.S. at 68.

Safelite's Terms of Service contains an express delegation clause:

> The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel.

Terms § 25.1. This language is virtually identical to the delegation clause the Supreme Court upheld in *Rent-A-Center*, which gave "[t]he Arbitrator . . . exclusive authority to resolve any

dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement." 561 U.S. at 66.

Because the delegation clause here constitutes "clear and unmistakable" evidence of the parties' intent to delegate arbitrability, all challenges to the enforceability, scope, or validity of the Arbitration Agreement must be resolved in arbitration. *Henry Schein*, 586 U.S. at 69; *see Rent-A-Center*, 561 U.S. at 68–72 (same).

**D. The Court Should Stay the Case Pending Arbitration.**

Because an arbitration agreement exists, the Court should "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 474 (2024).

## CONCLUSION

Safelite respectfully asks this Court to grant its Motion to Compel Arbitration, order Mr. Blomenkamp to submit all of his claims to arbitration before the American Arbitration Association, and otherwise stay this case.[4]

[4] Safelite also is filing today a Motion to Stay this case until the Court resolves this Motion to Compel Arbitration. As explained in the Motion to Stay, a stay would not prejudice any party and would preserve the Court's and the parties' resources, which otherwise would unnecessarily be spent litigating a case that must go to arbitration.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Tiffany D. Lipscomb-Jackson*

**JONES DAY**
Tiffany D. Lipscomb-Jackson (*pro hac vice*)
Ryan Harmanis (*pro hac vice*)
Ryan P. Mueller (Illinois Bar No. 6342675)
tdlipscombjackson@jonesday.com
rharmanis@jonesday.com
rmueller@jonesday.com
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215-2673
Telephone: 614-469-3939
Facsimile: 614-461-4198

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2026, a copy of the foregoing was filed using the CM/ECF system, which will effectuate service on all counsel of record.

*/s/ Tiffany D. Lipscomb-Jackson*
Tiffany D. Lipscomb-Jackson

*Attorney for Defendants*